IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF KANSAS

| | |
|---|---|
| JOHN BALODIMAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-2158-WEB |
| ) | |
| ADVANCE STORES COMPANY, INC., ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM AND ORDER

Plaintiff John Balodimas filed an amended complaint alleging wrongful discharge and a violation of public policy.  Advance Stores Company, Inc. (hereafter Advance) filed a Motion to Dismiss.  (Doc. 4).

I.  Facts

Balodimas was employed by Advance from January 2009 to approximately September 1, 2010.  Balodimas was injured on the job on May 1, 2009, and filed a worker's compensation claim.  He was released to go back to work in early 2010.  Balodimas settled his worker's compensation claim, which included a provision that Balodimas voluntarily terminate his employment, and in addition to the payment of medical bills, Advance paid Balodimas a lump sum payment.  Balodimas then filed this suit, alleging wrongful discharge and a violation of public policy.

II.  Jurisdiction

Jurisdiction is not disputed, and is properly before the court based on diversity and the amount in controversy pursuant to 28 U.S.C. § 1332.

III.  Standard of Review

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Sutton v. Utah State School for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991)). Furthermore, "all well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party." Beedle v. Wilson, 422 F.3d 1059, 1063 (10th Cir. 2005). Documents attached to the complaint are considered as part of the pleadings. Tal v. Hogan, 453 F.3d 1244, 1264 n. 24 (10th cir. 2006).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the court must look for "plausibility in the complaint." Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007). Under this standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The possibility that plaintiff could prove some facts in support of the pleaded claims is insufficient; the court must believe the plaintiff has a reasonable likelihood of showing factual support for the claims. Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007). The plaintiff must "nudge his claims across the line from conceivable to plausible" in order to survive a motion to dismiss. Bell Atlantic Corp. at 1974.

IV.  Discussion

A 12(b)(6) motion must be converted to a motion for summary judgment if "matters outside the pleading are presented to and not excluded by the court" after all parties are "given a reasonable opportunity to present all the material that is pertinent to the motion" Fed.R.Civ.P. 12(d). If a document is referred to in the complaint and is central to the plaintiff's claim, a

defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.  GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381 (10th Cir. 1997).

Advance submitted to the court an authenticated copy of the transcript of the settlement hearing.  Advance did not request the court convert the motion to dismiss into a motion for summary judgment.  Advance argues that the contents of the transcript are central to Balodimas' claims.  Balodimas then filed the amended complaint, and his response to the motion to dismiss.  In the response, Balodimas argues that the allegations in the Amended Complaint are based on a letter dated August 18, 2010, from Advance to Balodimas' attorney, not from the statements made at the settlement hearing.  Balodimas argues that the transcript is not central to his claims, but is instead central to Advances' defense.  Therefore, Balodimas argues the transcript cannot be considered without converting the motion to dismiss into a motion for summary judgment.

A review of both the transcript of the settlement hearing and the letter dated August 18, 2010 show both documents are clearly central to the claims in the complaint.  Balodimas alleges that he was discharged based on retaliation, although he allegedly did not want to resign his position and made requests of his employer to retain his position.  Balodimas further argues that there is a causal connection between the termination and the filing of the worker's compensation claim.  The transcript of the settlement hearing is central to the causal connection element and to Balodimas' claim that he wanted to retain his employment.  Furthermore, Advance argues that the original complaint did not clearly identify the letter as the basis for the claims.  The settlement transcript was submitted in Advance's attempt to dismiss the original complaint, but it is clearly central to the Amended Complaint as well.  The transcript is a dispositive document central to the claims of Balodimas.

Kansas recognizes a claim for wrongful discharge when an employee is terminated in violation of state public policy as declared by the legislature or by the courts. Flenker v. Willamette Industries, Inc., 266 Kan. 198, 204, 967 P.2d 295 (1998). In Murphy v. City of Topeka-Shawnee, 6 Kan.App.2d 488, 630 P.2d 186 (1981), the court recognized that a claimant could bring a retaliatory discharge claim following the termination of his employment for exercising his rights under the Kansas Workers Compensation Act. Id. at 497.  Typically, to establish a prima facie case of retaliatory wrongful discharge, the plaintiff must show (1) he filed a claim for worker's compensation benefits or sustained a work-related injury for which he could assert a future claim for such benefits; (2) that the employer had knowledge of his claim or the fact that he had suffered a work-related injury; (3) the employer terminated his or her employment; and (4) a causal connection existed between the protected activity or injury and the termination. Huffman v. Ace Elec. Co., 883 F.Supp. 1469, 1475 (D.Kan. 1995).

A search of relevant cases finds two cases with facts similar to the case at hand.  In Pettyjohn v. Estes Exp. Lines, 124 Fed.Appx. 174 (4th Cir. 2005), the claimant entered into a settlement agreement with his employer, in which the worker's compensation claim was settled, and as part of the settlement, claimant had to resign his position.  Claimant then filed suit, alleging wrongful discharge.  The Court found that claimant had to show that he was either fired or constructively discharged. Id. at 178.  Alternatively, the Court found that claimant could show that he was forced to resign as part of the settlement agreement. Id.  The Court found that there was no evidence that claimant was forced to resign to settle his workers' compensation claim, no evidence that Pettyjohn was constructively discharged,  nor was there evidence that the employer was unwilling to settle his claim unless he resigned. Id. at 180.  The Court found that

claimant was compensated for his resignation, and there was no violation of North Carolina's compensation rules.  Id.

In Mial v. Warner-Lambert/Parke Davis Corp., 1993 WL 625954 (E.D.Mich., June 7, 1993), the claimant filed suit against the employer, alleging termination based on race.  The claimant filed a worker's compensation claim after being terminated, and in the settlement, claimant executed a Resignation of Employment.  Id. at *1.  The Court found that the release signed by the claimant was broad enough to encompass a wrongful discharge claim.  Id. at *3.  The Court found that claimant voluntarily quit his employment in settling the worker's compensation claim, and claimant was precluded from continuing his lawsuit.  Id.

The case at hand is similar to the two cases cited above.  The letter dated August 18, 2010 contained the following language:

> "It appears the employer is having a difficult time continuing to accommodate the permanent physical restrictions imposed by the authorized treating physician.  Consequently, it may become necessary for your client's employment to come to an end at Advance Auto Parts.
> Accordingly, please be advised the respondent and its insurance carrier propose to settle any and all issues in the above-referenced matter, full and final, in consideration for the lump sum payment of $35,000.00.  Moreover, the employer would expect your client to voluntarily terminate his employment from Advance Auto Parts as the offer of settlement takes into consideration a 'work disability based upon your client's wage and task loss .'"

At the settlement hearing, after the employer's counsel advised the court of the terms of the settlement, the Judge asked Balodimas if that was an accurate statement of the terms.  Balodimas stated it was, but that he felt coerced into resigning.  After further discussion, the Judge asked Balodimas, "Do you voluntarily want to go forward with your settlement?"  Balodimas replied, "Yes, sir."  Employer's counsel then stated:

> "I just want to make sure as you indicated, Your Honor, we don't want to coerce

5

> Mr. Balodimas into anything.  This is based upon a work disability which obviously means that he's not working any longer.  However, the employer was happy with his employment and if he wants to continue to be employed then, of course, we would have to enter into a different settlement other than the $40,000.  It's entirely up to him.  I want to make sure that if he wants to accept this settlement of $40,000 he's doing so with the understanding that he's voluntarily resigning his employment even though he's not happy with it."

Judge: "Is that accurate?"

Claimant: "Yes, sir."

Under the standards for a motion to dismiss, plaintiff must only plead facts to lead the court to believe that the plaintiff has a reasonable likelihood of showing factual support, Ridge at Red Hawk, 493 F.3d at 1177, and that discovery will reveal evidence of the alleged conduct. Twombley, 550 U.S. at 556.  Balodimas alleges in the complaint that his termination was an adverse employment action, either under retaliatory discharge or constructive discharge.  It does not appear that Balodimas can show factual support for either theory.  Both the letter and the transcript refer to Balodimas voluntarily resigning his position.  Balodimas has not plead facts that show he suffered an adverse employment action.   Balodimas alleges in the complaint that he was forced to resign, although that statement is not supported by the letter, the transcript, nor is there any indication that Balodimas will be able to set forth any facts to support this position.  Balodimas has not plead sufficient facts to state a claim for relief for wrongful discharge, as he has not plead facts to show he was terminated from his employment.

Advance argues that to the extent that Balodimas attempts to argue that he was constructively discharged, he has failed to allege any facts in support of a constructive discharge claim.  Specifically, Advance argues that Balodimas has not alleged that working conditions were so bad that he had no other choice but to resign.

Constructive discharge occurs when "a reasonable person would view the working conditions as intolerable." Hirschfeld v. N.M. corr. Dept., 916 F.2d 572, 580 (10th Cir. 1990); and the employer, by illegal discriminatory acts, "has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." Derr v. Gulf Oil Corp., 796 F.2d 340, 344 (10th Cir. 1986). This is an objective test, not subjective on the view of the employee. MacKenzie v. City & County of Denver, 414 F.3d 1266, 1281 (10th Cir. 2005). The conditions must be so bad that the plaintiff had no choice but to quit. Exum v. United States Olympic Comm., 389 F.3d 1130, 1135 (10th Cir. 2004). The question is whether the employee had any other reasonable choice. Tran v. Trustees of State Colleges of Colorado, 355 F.3d 1263, 1270 (10th Cir. 2004). The finding of a constructive discharge must be justified by the existence of certain "aggravating factors" that make staying on the job intolerable. Cockerell v. Boise Cascade Corp., 781 F.2d 173, 177 (10th Cir. 1986).

Balodimas has not alleged any facts in the Amended Complaint related to working conditions. The only mention of work activities was Balodimas' request that he be allowed to keep his job, regardless of the settlement of his worker's compensation claim. Clearly, this request by Balodimas does not come close to stating sufficient facts to show that relief is plausible on its face. In fact, Balodimas stated that he received good performance reviews and was being considered for promotion. Also important is that claimant must allege that he had no other choice but to quit. Balodimas has not set forth any facts that lead the court to believe that there is a reasonable likelihood of showing factual support for the claim.

Balodimas' second claim is for a violation of public policy. Balodimas argues that Advance's requirement that he resign his position in the settlement of the worker's compensation

suit is a violation of Kansas public policy against coercion or retaliation. Kansas Courts have recognized a cause of action for a violation of public policy in a number of circumstances, "retaliation for the employee's opposition to illegal or unethical activities of the employer; retaliation for filing workers' compensation claims; retaliation for exercise of rights under labor-management relations statutes; penalizing the employee for refusal to take a polygraph examination; penalizing the employee for taking time to serve on jury duty; and various other violations of alleged public policy." Morriss v. Coleman Co. Inc., 241 Kan. 501, 738 P.2d 841 (1987). Balodimas has not distinguished his violation of public policy claim from the wrongful discharge claim, as the facts in each claim are the same and a violation of public policy includes the "retaliation of the exercise of rights under the worker's compensation laws." Id.

Balodimas relies on Murphy, 6 Kan.App.2d 488, 630 P.2d 186 (1981), and Brigham v. Dillon Companies, Inc., 262 Kan. 12, 935 P.2d 1054 (1997). Murphy was the pivotal case in Kansas which held that the discharge of an employee in retaliation for filing a worker's compensation claim gives rise to a tort claim. Id. at 495. The Murphy Court considered the public policy of the Worker's Compensation Act, to promote the welfare of the people in Kansas, and to prevent employers from coercing employees from exercising their rights under the act. Id. at 496. The Court found Murphy could proceed with a valid cause of action for retaliatory discharge. Id. at 497.

In Brigham, the employee was injured on the job, filed a claim for worker's compensation for injuries and took time off. When he returned to work, he was demoted. Brigham, 262 Kan. at 13. The Court recognized that a cause of action for retaliatory demotion was a logical extension of the cause of action for retaliatory discharge. Id. at 20. The Court

stated that "[T]he linchpin of the tort for retaliatory demotion is a violation of public policy. As such, the cause of action is strictly limited and would likewise prevent excessive judicial entanglement." Id. at 19 (internal quotations removed).

The cases cited to and relied upon by Balodimas support the argument that an adverse employment action, in response to the filing of a worker's compensation claim, is against public policy. In both cases, the public policy violation resulted in a wrongful discharge claims. Reliance on the two cases does not establish how Balodimas' second claim of a violation of public policy differs from the wrongful discharge claim.

The cases relied on by Balodimas are not similar to the case currently before the court. In the case at hand, Balodimas agreed to resign his position in a contractual agreement which settled his worker's compensation claim, as opposed to being discharged or demoted for filing an worker's compensation claim.

The Workers Compensation Act is structured to provide an incentive for employers "to rehabilitate the worker or accommodate the worker's disabilities." Hughes v. Inland Container Corp., 247 Kan. 407, 416, 799 P.2d 1011 (1990). The Act also benefits the employer by reducing the employer's liability, and reducing the amount of benefits paid. Griffin v. Dodge City Co-op Exchange, 23 Kan.App.2d 139, 147-48, 927 P.2d 958 (1996). The Griffin court stated, "the fact that the Workers Compensation Act *encourages* employers to rehabilitate and accommodate injured employees does not alone impose a legal duty on the employer to make such an accommodation or be subjected to a tort action for wrongful discharge. Had the legislature intended to *mandate* that employers accommodate injured employees, it could easily have included language similar to that now contained in the KAAD and the ADA into the

Workers Compensation Act." Id. at 148 (emphasis in original).  The Court went on to state that "the public policy creating the tort of retaliatory discharge does not *require* employers to consider or find alternative employment for an injured employee who is unable to return to his or her former position." Id. at 148-49.

In Wittig v. Allianz, A.G., 112 Hawai'i 195, 145 P.3d 738 (2006), the court found that worker's compensation settlements that include an employee's resignation do not violate public policy, and encourage voluntary settlement agreements. Id. at 203.  The Court recognized that the resignation condition could constitute bad faith, however, the Court found that a blanket prohibition against settlement agreements that contain resignation conditions would hamper settlement efforts.  Id.

In Dominique v. District of Columbia Dept. of Employment Services, 574 A.2d 862 (D.C. 1990), the plaintiff agreed to resign his position as a bus driver in the settlement of his worker's compensation claim.  After receiving the settlement, plaintiff filed suit, alleging retaliatory discharge.  The Court found that "[A]s a matter of public policy, settlements are encouraged and, like any other type of contract, they are binding on the parties when valid." Id. at 865, citing Gabrielian v. Gabrielian, 473 A.2d 847 (D.C. 1984).  The Court went on to state, "[S]ettlements cannot take place without a quid pro quo.  The claimant must be willing and able to waive his or her rights under the Workers' Compensation Act or there will be no incentive for employers to come to such agreements.  Once a claimant....agrees to waives such rights in return for a lump-sum and receives that sum....the employer does not "retaliate" against the claimant by reaping the benefits of the agreement." Id.

This court is also mindful of Obrecht v. Electrolux Home Products, Inc., 2005 W.L.

10

578477 (N.D. Iowa), in which the plaintiff agreed to termination of her job in her worker's compensation settlement. She then filed suit, alleging wrongful discharge. It is important to note that plaintiff argued that she did not agree that her employment would be terminated, and that she argued that the agreement did not contain a termination clause, although the Court's review of the settlement agreement found the agreement did contain language regarding a "discharge of further obligations of employment." Id. at *1. The Court recognized the public policy of termination in retaliation for filing a worker's compensation claim. Id. at *5. The Court found that the "language ... allowing... retaliatory discharge in contravention of well-grounded Iowa public policy would clearly outweigh any interest in the freedom of contract." Id. at *7.

Kansas law and statutes favor compromise and settlements. See Ellis v. Union Pacific R.R. Co., 231 Kan. 182, 192, 643 P.2d 158 (1982); In re Estate of Thompson, 226 Kan. 437, 440, 601 P.2d 1105 (1979); K.S.A. § 40-908; K.S.A. § 40-275. Most importantly, the Kansas Workers Compensation Act specifically provides for settlement. K.S.A. § 44-521. Employers do not face a wrongful discharge claim, or a violation of public policy claim every time they settle a worker's compensation claim that includes a provision for resignation. This court finds that if the Kansas Court were to decide the issue currently before this court, the Kansas Courts would follow the reasoning set out in Wittig and Dominique, which encourage settlement of worker's compensation claims and recognizes the freedom of parties to contract.

The court notes the cases discussed above were cases in which the plaintiff filed a wrongful discharge claim, or a claim against the insurer for bad faith, and they were not filed under a general "violation of public policy" claim. There is no question that the State of Kansas

recognizes the public policy violation of retaliating against an employee for filling a worker's compensation claim. Plaintiffs seeking redress for this type of violation typically file a wrongful discharge or wrongful demotion claim. The facts set out in Balodimas' violation of public policy claim do not differ from the facts set out in the wrongful discharge claim. Therefore, the court applies the same analysis. Balodimas alleges that he was retaliated against for exercising his rights under the Kansas worker's compensation laws. Balodimas must show that it is plausible that he will be able to show factual support for the claim. The letter and the settlement hearing clearly state that Balodimas voluntarily resigned his position in settlement of his worker's compensation claim. Balodimas has not plead sufficient facts to state a claim for retaliation in violation of public policy.

V.  Conclusion

IT IS THEREFORE ORDERED, based on the reasons set forth above, that Defendant Advance's Motion to Dismiss (Doc. 4 and Doc. 9) be granted.

IT IS SO ORDERED this 31st day of August, 2011.

    s/ Wesley E. Brown
Wesley E. Brown
Senior United States District Judge